IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

NATIONAL PASTIME SPORTS, LLC,

        Plaintiff,

v.

CSI INSURANCE GROUP, and
NEW HAMPSHIRE INSURANCE
COMPANY,

        Defendants.
_____/

## COMPLAINT

Plaintiff National Pastime Sports, LLC ("NPS"), through counsel, alleges as follows for its Complaint against Defendants CSI Insurance Group ("CSI") and New Hampshire Insurance Company ("NHI"):

### Parties, Jurisdiction, and Venue

1. NPS is a Michigan limited liability company with its principal place of business in Rochester, Michigan.

2. Upon information and belief, CSI is a Texas company with its principal place of business located in Dallas, Texas.

3. Upon information and belief, NHI is a New York company with its principal place of business located in New York, New York.

4. Jurisdiction is proper under 28 U.S.C. § 1332 because this is a civil action seeking damages in excess of $75,000 and is between citizens of different states.

5. Venue is proper under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred within the Eastern District of Michigan.

**General Allegations**

6. NPS was hired by the Cleveland Indians Baseball Company LP (the "Indians") to produce nine or ten "Kids Fun Days."

7. NPS was required to design and produce certain elements of the fan festival. As part of its agreement, NPS was required to "provide comprehensive general liability insurance coverage insurance in the minimum amount of $5,000,000 per occurrence and $5,000,000 in the aggregate for bodily injury and property damage covering any claims, demands, causes of action, liabilities or damages, including legal costs and attorneys fees, arising out of obligations or performance by [NPS] . . . ."

8. On March 2, 2010, NPS completed its application for insurance in the amounts required by the Indians. (**Ex. A**.) This application included a disclosure that NPS would be including bounce houses or inflatables in its production for the Indians.

9. The application was sent to CSI. On its website, CSI claims that it is "the national leader providing insurance for independent concert promoters, live music venues, special events, performing artists, nightclubs, bars, restaurants and other specialty programs."

10. CSI provided an insurance proposal to NPS at the limits required by the Indians. (**Ex. B**.) The total cost for the insurance was $2,590.00.

11. NPS accepted CSI's proposal and paid the amount required by CSI.

12. CSI procured coverage for NPS with NHI. NPS was not involved in CSI's procuring of insurance, nor did it see what CSI had sent to NHI on its behalf.

13. NHI issued Policy Number 34271019 to NPS with policy period of May 7, 2010 to September 15, 2010. (**Ex. C**, the "Policy".)

14. At the time it was issued, NPS did not receive a copy of the Policy.

15. NPS believed that the Policy covered all aspects of the Kids' Fun Days for the Indians, including its use of bounce houses or inflatables in its production for the Indians.

16. NPS began producing Kids' Fun Days for the Indians.

17. For the Kids' Fun Days, the Indians instructed NPS to purchase an inflatable slide with from a specific vendor with Major League Baseball logos, among other specifications (the "Slide").

18. The Slide was manufactured by Scherba Industries, Inc. ("Scherba").

19. June 12, 2010 was a "Fun Day" produced by NPS. On June 12, 2010, NPS provided, among other things, the Slide.

20. On June 12, 2010, the Slide was operated by employees or representatives of the Progressive Corporation.

21. Upon information and belief, the Progressive employees or representatives failed to properly supervise use of the Slide at the "Fun Day."

22. Based on the Progressive Corporation's failure to operate the Slide per its instructions, the Slide tipped over on June 12, 2010.

23. None of the children on the Slide were injured when it tipped over.

24. The Slide tipped over onto Douglas Johnson and David Brown.

25. At the time the Slide tipped over, Mr. Johnson and Mr. Brown were spectators – neither was a participant using the Slide.

26. Upon information and belief, after the Slide landed on Mr. Johnson, he was treated by medical professionals at the Indians' ballpark.

27. Upon information and belief, Mr. Johnson was transported by ambulance to the Cleveland Clinic for further evaluation.

28.     Upon information and belief, Mr. Johnson went to the Cleveland Clinic for further evaluation and was released from the hospital on June 12, 2010.

29.     Upon information and belief, Mr. Johnson returned to his home in Pennsylvania on June 12, 2010, complaining of back pain.

30.     Upon information and belief, in the evening of June 20, 2010, Mr. Johnson collapsed in his home.  Mr. Johnson was pronounced dead early in the morning of June 21, 2010.

31.     On December 23, 2010, Mr. Johnson's estate and Mr. Brown filed a lawsuit in the Cuyahoga County Court of Common Pleas.  (**Ex. D**, the "Ohio Lawsuit".)

32.     The Ohio Lawsuit named the Indians, NPS, Scherba and the Progressive Corporation as defendants.

33.     On June 22, 2010, NPS reported the incident to CSI, including a copy of its incident report.  (**Ex. E**.)

34.     On the same day, CSI responded, claiming that "inflatable's [*sic*] are excluded on the policy you purchase [*sic*] from us."  (**Ex. E**.)

35.     NPS quickly pointed out that it had checked the box noting that inflatables would be in use for Kids' Fun Days.  (**Ex. E**.)

36.     CSI responded to learning this information by stating:

Sorry, I guess I missed it.  I'm so used to quoting up your events I think I hardly look at anything but the dates and the details of the event.  I will be sure to pay more attention in the future.  I have forwarded your email to the carrier.

(**Ex. E**.)

37.     Up to this time, NPS did not know that CSI failed to advise NHI that inflatables would be used at the Fun Day.

38.     On June 24, 2010, the Indians' insurer, American Specialty, tendered the claim to NPS for "defense and indemnification."  (**Ex. F**.)

4

39. NPS did not receive a copy of the Policy until *after* it tendered the Claim to CSI.

40. On June 29, 2010, NHI's claims administrator sent a letter to NPS indicating that it was investigating the claim filed by NPS. (**Ex. G**.)

41. On August 11, 2010, NHI's claims administrator advised the Indians' insurer, American Specialty, and NPS that it "will not provide a defense or indemnify you for this matter," and that it "will not be responsible for any settlement, verdict or judgment as a result of this claim against you." (**Ex. H** at 8.)

42. NHI's refusal to provide coverage for NPS and the Indians was because "coverage is excluded for bodily injury arising out of the ownership, operation, maintenance or use of any amusement device such as the inflatable slide which is the subject of the occurrence of June 12, 2010." (**Ex. H** at 7.)

43. On August 23, 2010, American Specialty advised NPS that it must "resolve this coverage problem with your insurance company within the next 15 days with your insurance company. . . . If this does not occur within this time frame, AXIS Insurance Company, Cleveland Indians Baseball Company will undertake any necessary action available to enforce the contract you agreed upon." (**Ex. I**.)

## Count I – Declaratory Judgment Against NHI

44. NPS incorporates the allegations in the preceding paragraphs as though fully set forth here.

45. The facts and circumstances of this case present a case of actual controversy regarding the rights and legal relations of the parties.

46. NPS satisfied all of its requirements for coverage by NHI, including disclosing on its application that it would be using bounce houses or inflatables in its production for the Indians.

47. NPS paid valuable funds in consideration for the coverage provided by NHI.

48. The Policy, including NPS' application, covered the Kids' Fun Day on June 12, 2010.

49. The Policy, including NPS' application, requires NHI to provide coverage for the Ohio Lawsuit.

50. The Policy, including NPS' application, requires NHI to indemnify and defend NPS and the Indians for the Ohio Lawsuit.

51. NPS is entitled to a declaration that NHI must cover NPS for the Kids' Fun Day on June 12, 2010.

52. NPS is entitled to a declaration that NHI indemnify and defend NPS and the Indians for the Ohio Lawsuit.

53. NPS seeks judgment as hereinafter set forth.

## Count II – Negligence Against CSI

54. NPS incorporates the allegations in the preceding paragraphs as though fully set forth here.

55. CSI owed NPS a duty to ensure it obtained complete insurance for the Kids' Fun Days.

56. CSI breached its duty to NPS when it failed to ensure that the Policy expressly covered the Kids' Fun Days and the subsequent Ohio Lawsuit.

57. CSI misrepresented the nature and extent of the coverage provided to NPS.

58.     CSI admits that it caused NPS' damages by failing to note that NPS' application clearly disclosed that would be using bounce houses or inflatables in its production for the Indians.

59.     NPS has been damaged as a result of CSI's negligence.

WHEREFORE, NPS respectfully requests that this Court order the following relief:

A.      Declaratory relief that NHI must cover NPS for the Kids' Fun Day on June 12, 2010;

B.      Declaratory relief that NHI must indemnify and defend NPS and the Indians for the Ohio Lawsuit;

C.      In addition to, or in the alternative, an award of money damages in favor of NPS sufficient to compensate them for all forms of economic loss including, without limitation, incidental damages, consequential damages, and lost profits;

D.      An award of legal fees and other costs; and

E.      All such other relief as the Court may deem just, equitable or appropriate under the circumstances.

                                Respectfully submitted,

                                BOYLE BURDETT


                                By: s/H. William Burdett, Jr.
                                    Eugene H. Boyle, Jr. (P42023)
                                    H. William Burdett, Jr. (P63185)
                                14950 East Jefferson, Suite 200
                                Grosse Pointe Park, Michigan 48230
                                (313) 344-4000
                                (313) 344-4001 (facsimile)
                                burdett@boyleburdett.com
Dated: April 1, 2011             *Attorneys for National Pastime Sports, LLC*