UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

National Pastime Sports, LLC,

Plaintiff,

Case No.: 11-11378

v.

Honorable Sean F. Cox

CSI Insurance Group, and New Hampshire Insurance Co.,

Defendants,

and

New Hampshire Insurance Co.,

Counterclaim Plaintiff/Third-Party Plaintiff,

v.

National Pastime Sports, LLC,

Plaintiff/Counterclaim Defendant,

and Cleveland Indians Baseball Co., L.P.,

Third-Party Defendant,

and

Cleveland Indians Baseball Co., L.P.,

Third-Party Defendant/Third-Party Counterclaim Plaintiff,

v.

New Hampshire Insurance Co.,

Third-Party Plaintiff/Third-Party Counterclaim-Defendant,

and

Cleveland Indians Baseball Co., L.P.,

Third-Party Defendant/Third-Party
Counterclaim Plaintiff/Fourth-Party Plaintiff,

v.

CSI Insurance Group,

Defendant/Fourth-Party Defendant.

_______________________________________/

OPINION & ORDER GRANTING NEW HAMPSHIRE INSURANCE CO.'S MOTION FOR JUDGMENT ON THE PLEADINGS

This is an insurance coverage dispute that arises out of an underlying wrongful-death action in Ohio State Court (the "underlying lawsuit"). National Pastime Sports, LLC ("NPS") initially filed this action against an independent insurance agency, CSI Insurance Group ("CSI")[1] and also against its insurer, New Hampshire Insurance Co. ("NHIC"). In its complaint, NPS seeks a declaration that NHIC defend and indemnify NPS for the underlying lawsuit, and also alleges negligence against CSI.

NHIC subsequently filed a Third-Party Complaint against the Cleveland Indians Baseball Co., L.P. ("Cleveland") and a counterclaim against NPS. Cleveland, in turn, filed a counterclaim against NHIC for a declaratory judgment, and also filed a "fourth-party" complaint against CSI.

The matter is currently before the Court on NHIC's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and, in the alternative, summary judgment under Fed. R. Civ. P. 56. Although NHIC also brings a motion for summary judgment, it filed its motion well before the

[1]On March 19, 2012, NPS and CSI stipulated to the dismissal of all claims asserted by NPS against CSI. (Doc. No. 61).

discovery cut-off date of January 31, 2012. The Court issued a Scheduling Order on August 17, 2011 (D.E. No. 38), and NHIC filed this motion two weeks later, on August 31, 2011. (Doc. No. 39). The Court has therefore analyzed NHIC's motion solely as a motion for judgment on the pleadings.[2]

In its motion, NHIC seeks judgment in its favor on NPS's complaint (Doc. No. 1), Cleveland's counterclaim against NHIC (Doc. No. 24), and on NHIC's counterclaim against NPS and Cleveland (Doc. No. 8). The parties have fully briefed the issues and the Court held a brief hearing on April 5, 2012. For the reasons set forth below, the Court shall GRANT NHIC's motion.

BACKGROUND

I. Factual Background

---

[2]In the multiple pleadings at issue in this case, the parties refer to a number of contracts, emails, and letters. The parties have attached copies of all of these relevant documents to their complaints and counterclaims. The parties had not completed discovery when NHIC filed this instant motion. With respect to documents referenced in pleadings, the Sixth Circuit has held:

> [A] document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. . . This occurs when 'a document is referred to in the complaint and is central to the plaintiff's claim....' In such event, 'the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.

*Greenberg v. Life Ins. Co. Of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner, D.P.M., v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Therefore, in determining NHIC's motion for judgment on the pleadings, the Court has considered the relevant documents attached to the parties' pleadings.

On or about March 23, 2010, Cleveland executed a Production Agreement with NPS to produce certain elements of ten fan festivals, known as "Kids Fun Days," at Cleveland Indians games between May 9, 2010, and September 12, 2010. As part of the events' entertainment, NPS agreed to provide an inflatable slide.

Pursuant to the agreement, NPS was also to "provide comprehensive general liability insurance coverage. . . covering any claims, demands, causes of action, liability or damages, including legal costs and attorney fees, arising out of obligations or performance by producer under [the] Agreement." The agreement also provided, "The insurance certificates will also name the following as an additional insured: 'Cleveland Indians Baseball Company. . . .'"

NPS contacted CSI to procure insurance coverage in accordance with NPS's agreement with Cleveland. On March 2, 2010, NPS submitted an Annual Events Application to CSI. On the application, an agent for NPS checked the "yes" box next to the qualification question, "Any event with bounce houses or inflatables? (If yes, certificates of insurance are required)." The application also requests $5,000,000 in general liability insurance. CSI subsequently provided NPS with an insurance proposal for general liability coverage from NHIC for a premium of $2,590.00.

NPS accepted the proposal and on April 27, 2010, CSI issued a Certificate of Insurance to NPS and Cleveland. The Certificate of Insurance provides that NPS is covered by $5,000,000 of commercial general liability insurance and lists Cleveland as an additional insured. The certificate states, "This coverage is with respect to Cleveland Indians Kids Fun Day event to be held [on the specific dates listed]." Furthermore, near the top, right corner, the Certificate of Insurance provides, "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION

ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." The certificate also states, "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. . . ." *Id.*

NHIC issued a general liability policy (the "Policy") to NPS with an effective policy period of May 7, 2010 to September 15, 2010. (Policy, NHIC Ex. A, at Apx. 1). The Policy includs Cleveland as an additional insured.

The Policy provides for the following coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking those damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Policy at Apx. 1).

The Policy includes an endorsement which excludes coverage for bodily injury resulting from the collapse of temporary structures (the "Temporary Structure" exclusion). The endorsement provides:

> COLLAPSE OF TEMPORARY STRUCTURE EXCLUSION ENDORSEMENT
>
> This endorsement modifies insurance under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> The following exclusion is added to Paragraph 2 of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I — COVERAGES) [the exclusions paragraph of the

> Policy]:
>
> This policy does not apply to any "bodily injury" or "property damage" arising out of the collapse of a temporary grandstand, tent, bleacher, stage and/or any other temporary structure.
>
> All other terms and conditions of the policy remain the same.

(Policy at Apx. 34).

The Policy also contains an additional endorsement, titled "EXCLUSION – SPORTS/LEISURE/ENTERTAINMENT ACTIVITIES AND DEVICES", which lists a number of potential exclusions to coverage for personal injury liability. (Policy at Apx. 47). The endorsement states, "if an X is indicated to the left of such exclusion. . . This insurance does not apply to 'bodily injury,' 'property damage,' 'personal and advertising injury.'" (*Id.*). There is an "X" to the left of the exclusion titled "Amusement Device" (the "Amusement Device exclusion") which states:

> Arising out of the ownership, operation, maintenance or use of any "amusement device."
>
> For purposes of this exclusion, "amusement device" means any device or equipment a person rides for enjoyment, including, but not limited to, any mechanical or non-mechanical ride, slide, water slide (including any ski or tow when used in connection with a water slide), moonwalk or moon bounce, bungee operation or equipment. "Amusement device" does not include any video arcade or computer game.

(*Id.*). There is also an "X" to the left of the exclusion titled, "Participant" (the "Participant" exclusion), which states, "Arising out of the involvement of a participant in any activity, event or exhibition, including but not limited to, any contest, physical training, sport, event, athletic activity, martial arts or stunt." (*Id.*)

On June 12, 2010, during one of the scheduled Kids Fun Day events and also during the

effective policy period, two Cleveland Indians spectators, Douglas Johnson and David Brown, were injured when an inflatable slide, which was provided by NPS for the Kids Fun Day event, collapsed. Mr. Johnson died on June 21, 2010, presumably as a result of the injuries suffered while attending the Kids Fun Day. The Johnson Estate and David Brown filed a lawsuit against Cleveland and NPS.

On June 22, 2010, NPS contacted CSI and notified it of the Johnson/Brown suit. CSI replied to NPS, stating that "inflatables are excluded on the policy you purchased from us." NPS responded, "With regards to the inflatable question on the cover page of the application we did check that inflatables would be in use for this event." *Id*. That same day, an agent for CSI replied, "Oh, ok. Sorry, I guess I missed it. I'm so used to quoting up your events I think I hardly look at anything but the dates and the details of the event. I will be sure to pay more attention in the future. I have forwarded your email to the carrier."

On June 24, 2010, Cleveland tendered the Johnson/Brown suit to NPS for defense and indemnification. Despite the fact that NPS indicated on its Annual Events Application that the Kids Fun Days would include inflatables, the NHIC claims administrator wrote a letter to Cleveland on August 11, 2010, notifying it that the Johnson/Brown suit is not covered under the terms of the insurance policy. In the letter, NHIC referenced the policy's Amusement Device endorsement, which excluded coverage for bodily injury "[a]rising out of ownership, operation, maintenance or use of any 'amusement device.'"

## II. Procedural Background

NPS filed this action on April 1, 2011, seeking a declaration that "NHIC must cover NPS

for the Kids' Fun Day June 12, 2010." (NPS Complaint at ¶¶ 52-53).

On May 3, 2011, NHIC filed an answer to NPS's complaint, and also filed a counterclaim/third-party complaint against NPS and Cleveland. (D.E. No. 8). In its counterclaim, NHIC requests a declaratory judgment that sates, "[NHIC] has no duty to provide coverage to National Pastime or Cleveland Indians under the [NHIC] Policy with respect to the Underlying Lawsuit." (*Id*. at 15).

Similarly, on May 27, 2011 Cleveland filed a counterclaim against NHIC, and in Count I, requests "a declaration that [NHIC] must cover it for any and all claims of negligence made against its insured arising out of the Kids Fun Day on June 12, 2010," and also states that "The Cleveland Indians is entitled to a declaration that [NHIC] shall indemnify and defend the Cleveland Indians for the underlying lawsuit." (D.E. No. 24). Cleveland's counterclaim also alleges: Count II – Estoppel; Count III – Breach of Contract; Count IV – Innocent Misrepresentation; Count V – Fraud and Intentional Misrepresentation; Count VI – Fraud Based on Failure to Disclose (Silent Fraud); Count VII – Negligence; Count VIII – Reformation. (*Id*.).

NHIC filed this motion for judgment on the pleadings, or in the alternative, motion for summary judgment on August 31, 2011. (D.E. No. 39).

LEGAL STANDARD

NHIC brings its motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Motions under FED. R. CIV. P. 12(c) are analyzed under the same standard as motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6). That standard is as set forth in *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). The Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint

states a plausible claim for relief. *Id*. "However, the plaintiff must provide the grounds for its entitlement to relief" and that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

ANALYSIS

I. The Policy precludes coverage for the underlying lawsuit.

In its motion, NHIC asserts that both the Amusement Device exclusion and the Temporary Structure exclusion preclude coverage of the underlying lawsuit. As discussed in detail below, the Court finds that the Policy's Amusement Device exception unambiguously precludes coverage for injury arising out of the use or maintenance of slides, and therefore precludes coverage for the underlying lawsuit.

Courts apply general rules of contract interpretation when interpreting insurance contracts. *McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439 (2010). Under Michigan law,[3] courts "must construe and apply unambiguous contract provisions as written." *Rory v. Continental Ins Co.*, 473 Mich. 457, 461 (2005). "The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase." *McGrath*, 290 Mich. App at 439. "A contract is ambiguous when its words may be reasonably understood in different ways." *Scott v. Farmers Ins Exch*, 266 Mich. App 557, 561 (2005). "The mere fact that a term is not defined in a policy does not render that term ambiguous." *Vushaj v.*

[3]None of the parties dispute that Michigan law governs this lawsuit.

*Farm Bureau Gen. Ins. Co. of Mich.*, 284 Mich. App. 513, 515 (2009). "Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings." *Henderson v. State Farm Fire and Cas. Co.*, 460 Mich. 348, 354 (1999). If insurance contract language is found to be ambiguous, the ambiguous provision must be construed against the insurer. *Auto-Owners Ins. Co. v. Martin*, 284 Mich. App. 427, 434 (2009).

A. The Amusement Device exclusion precludes coverage of the underlying lawsuit.

As stated above, the Policy does not cover bodily injury that arises "out of the ownership, operation, maintenance or use of any 'amusement device.'" (Policy at Apx. 47). The Policy goes on to define "amusement device" as "any device or equipment a person rides for enjoyment, including, but not limited to, any mechanical or non-mechanical ride, slide . . . moonwalk or moon bounce . . . ." (*Id.*). NHIC asserts that the underlying incident "unquestionably arose out of the operation or use of a slide," any thus liability arising from the use of the slide is excluded from coverage. (NHIC Br. at 9).

NPS and Cleveland do not dispute that the inflatable slide involved in the underlying incident is an amusement device as defined by the Policy, but rather contend that the exclusion does not extend to the circumstances surrounding Mr. Johnson's and Mr. Brown's injuries. Both parties essentially present the same argument: that the Policy does provide coverage for the underlying incident because the Policy "only excludes coverage for any 'participant' on an 'amusement device,'" and Mr. Johnson and Mr. Brown were merely "spectators." (NPS Br. at 4). NPS further asserts that the Amusement Device exclusion does not apply to spectators and that at "the very minimum, the language is sufficiently ambiguous to warrant denial" of NHIC's motion. (*Id.* at 5). Similarly, Cleveland takes the position that the Amusement Device

exclusion does not extend to the underlying lawsuit because Mr. Johnson and Mr. Brown did not actually ride the amusement device.

The Court finds NPS's and Cleveland's interpretations of the Amusement Device exclusion to be unreasonable interpretations of the Policy. "Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion." *State Farm Mut. Automobile Ins. Co. v. Roe (On Rehearing)*, 226 Mich. App. 258, 263 (1997) (citing *Hawkeye-Security Ins. Co. v. Vector Constr. Co.*, 185 Mich. App. 369, 384 (1990)). NPS attempts to piecemeal two separate provisions of the Sports/Leisure/Entertainment/Activities and Devices endorsement to limit the scope of the Amusement Device exclusion. Read as a whole, as Michigan contract law requires, it is clear that each listed paragraph of the Sports/Leisure/Entertainment/Activities and Devices endorsement is a separate exclusion with its own meaning. To interpret them as one, all-encompassing exception would be a strained construction of the endorsement.

The endorsement specifically states, "The following ***exclusions*** are added to Paragraph 2 [the Exclusions paragraph of the Policy] . . . if an X is indicated to the left of such exclusion . . . This insurance does not apply to 'bodily injury' . . . .'" (Policy at Apx. 47) (emphasis added). The endorsement then goes on to list a number of activities, each beginning with the phrase "[a]rising out of . . . ." There is an X to the left of the paragraphs titled "Amusement Device" and "Participant." There is no X to the left of separate paragraphs (exclusions) titled, "Inverted Arial Maneuver," "Bungee," "Animals," "Object Propelled," or "Rodeo." Thus, reading the endorsement in its entirety, the endorsement provides, "This insurance does not apply to 'bodily injury' . . . [a]rising out of the ownership, operation, maintenance, or use of any 'amusement

device.'" (*Id.*). Separately, the endorsement provides for an additional exclusion, stating, "This insurance does not apply to 'bodily injury' . . . [a]rising out of the involvement of a participant in any activity, event or exhibition . . . ." (*Id.*).

In this case, there is no dispute that Mr. Johnson's and Mr. Brown's injuries arose out of NPS's ownership, operation, maintenance, or use of an amusement device. The fact that Mr. Johnson and Mr. Brown were not actively riding the amusement device is irrelevant because the exclusion creates no such requirement. Even in attempting to read the "Amusement Device" paragraph and the "Participant" paragraph as one exclusion, the "Participant" paragraph would not limit the scope of the exclusion to participants on an amusement device. Such an interpretation would render meaningless the language of the endorsement that states: "arising out of the ownership, operation, maintenance, or use." As stated above, Courts are to give effect to every word, clause, and phrase of a contract.

Similarly, Cleveland contends that, to be excluded from coverage, the injured parties must actually be riding the amusement device at the time of injury. Cleveland attempts to compare this case to *Schmitz v. Great Aemrcian Assurance Co.*, 337 S.W. 3d 700 (Mo. S. Ct. 2011)[4], where a woman died from injuries sustained after she fell from a portable rock climbing wall at a minor league baseball game. *Id.* at 703. In that case, the insurance policy contained similar language as the Policy in this case and excluded coverage for incidents "'[a]rising out of the ownership, operation, maintenance or use of any amusement device.'" *Id.* at 708. The policy similarly defined "amusement device" as "'any device or equipment a person rides for

---

[4]Cleveland also compares this case to *Kramarik v. Travelers*, 25 A.D. 3d 960, 808 N.Y.S. 2d 807 (S. Ct. App. Div. 2006). The facts in *Kramarik* are simply not applicable to the instant case.

enjoyment, including, but not limited to, any mechanical or non-mechanical ride, water slide (including any ski or tow when used in connection with a water slide), bungee operation or equipment.'" "Rock climbing wall" was not specifically listed under the policy's definition of "amusement device." The Missouri Supreme Court held that a rock climbing wall fell outside of the definition of "amusement device" because the definition requires a person to ride the device for enjoyment, and a person cannot passively ride a rock-climbing wall. *Id.* The policy therefore did not exclude coverage for the injuries sustained from the woman's use of the wall. *Id.*

*Schmitz* can be easily distinguished from the instant case. Contrary to the implications of Cleveland, the Missouri Supreme Court *did not* hold that the woman's injuries were covered because she was the actual participant. Rather, the court held the woman's injuries were covered because rock climbing walls are not amusement devices under the Policy. Unlike the policy in *Schmitz*, NHIC's Policy specifically includes "slides" (as opposed to just water slides), in its definition of amusement devices, and excludes coverage for bodily injury that arises out of the ownership, operation, maintenance, or use of a slide. Again, the language of the policy is unambiguous. The exclusion is not limited to injuries that arise out of "riding" the slide. The injuries sustained arose out of NPS's ownership, operation, maintenance, or use of the slide – a device unquestionably included in the definition of "amusement device."

The Amusement Device exclusion cannot be reasonably interpreted to have the additional meanings suggested by NPS and Cleveland, and therefore is not ambiguous. The Court concludes that the Amusement Device exclusion squarely precludes coverage for the injuries alleged in the underlying lawsuit – injuries arose out of the operation, maintenance, or

use of an amusement device.

B. The Temporary Structure Exception.

NHIC also alleges that, even if the Amusement Device exclusion does not preclude coverage, coverage is precluded by the Temporary Structure exception. The Collapse of Temporary Structure Exclusion Endorsement states that "[t]his policy does not apply to any 'bodily injury' or 'property damage' arising out of the collapse of a temporary grandstand, tent, bleacher, stage and/or any other temporary structure." (Policy at Apx. 34). NHIC relies on the dictionary definition of "structure" for its ordinary meaning. *See McGrath*, 290 Mich. App. at 439 ("Any terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries."). Webster's Dictionary defines "structure" as "something (as a building) that is constructed." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed.).

NPS and Cleveland do not dispute that an inflatable slide collapsed on Mr. Johnson and Mr. Brown. Instead, both parties again present similar arguments that NHIC did not specifically include the term "inflatables" in the exclusion, and the term "temporary structure" does not include inflatables.

This is an issue that the Court does not need to delve into. The coverage is explicitly precluded under the Amusement Device exception, and therefore the Court declines to determine whether the term "temporary structure," as used in the Policy, includes inflatable slides.

II. Cleveland's Remaining Claims.

NHIC also seeks dismissal of Cleveland's "contract-avoidance" claims and sets forth a number of arguments in its motion regarding the merits of these claims. These remaining claims

are: Count II – Estoppel; Count III – Breach of Contract; Count IV – Innocent Misrepresentation; Count V – Fraud and Intentional Misrepresentation; Count VI – Fraud Based on Failure to Disclose (Silent Fraud); Count VII – Negligence; Count VIII – Reformation.

In its response brief, Cleveland does not address any of these additional claims. As stated on the record during the April 5, 2012 hearing on this matter, Cleveland is no longer pursuing these claims against NHIC.

The Court shall also grant NHIC's motion as it relates to Cleveland's Counts II through VIII.

CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that New Hampshire Insurance Co.'s motion for judgment on the pleadings (D.E. No. 39) is GRANTED.

IT IS FURTHER ORDERED that National Pastime Sports, LLC's Count I of its Complaint ("Declaratory Judgment Against NHI") (D.E. No. 1) is DISMISSED. Accordingly, the only remaining count in National Pastime Sports, LLC's Complaint is "Count II – Negligence Against CSI."

IT IS FURTHER ORDERED that the Cleveland Indians' Counterclaim Against New Hampshire Insurance Company (D.E. No. 24) is DISMISSED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Court

Dated: April 12, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on

April 12, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager